SNEED, J.,
delivered the opinion of -the Court.
The questions of law in this case arise upon a bill for rescission, filed in the Chancery Court at Linden. The complainant, in .1863, bought a small tract of land lying in Perry county, from the defendant, who purchased the land of H. A. Delobelle, a citizen and. subject of France. A judgment at law on complainant’s note for the purchase money was obtained by the defendant, and -thereupon the complainant brought .his bill praying an injunction and a rescission of the- *87 contract, upon the ground, that defendant, who had given him a title bond only, could not' make him a perfect title — that the title was in the defendant’s vendor, the said Delobelle, who was an alien, and who under the laws of this State could not make a deed of conveyance. The defendants held and claimed under a deed executed by the son of Delobelle, who was. living in this country, as attorney in fact for his father.. But it is alleged that young Delobelle had no power of attorney from his father to sell the land or execute. the deed, To this the defendants reply, that young Delobelle did have, authority from his father to sell and convey, but that the power of attorney had been lost; that the complainants had gone into possesion of the premises under their purchase and were still in possession; that there was no fraud or misrepresentation about the state of the title, and that defendants in a reasonable time would be able to produce a perfect title; that at the time of the sale they believed they held a perfect title. They ask the Court for reasonable time in which to obtain a title from De-lobelle, which is granted. The bill and answer were both sworn to, and there was no proof in the cause..
At the December Term, 1868, the cause was heard upon bill, answer and exhibits. The defendants had produced and filed with the Master the new deed- of Delobelle, duly executed on the 29th February, 1868,. and authenticated before the American Consul at Paris, and registered in the proper office at London — but without a revenue stamp upon it. They had also filed with the Master their own deed to complainants, both *88 of which they tendered on the hearing. The production of these deeds as evidence, was objected to by complainants.
The Chancellor held that Delobelle beihg an alien could not convey land in Tennessee; that his vendee would hold subject to the laws of escheat, and that -therefore the defendants could not convey a perfect title. The Chancellor rejected the deed of Delobelle also because it was unstamped. Under the recent decisions of this Court it is unnecessary to discuss the latter point. He decreed a rescission of the contract and a perpetual injunction. The 'defendants appealed.
It will be observed in the statement of the case, that thete is no averment' in the bill of a fraudulent purpose on the part of the vendor, and no imputation of concealment of the state of the title or other bad faith on his part. In the answer the defendants positively disclaim all fraudulent intent, and aver that at the time of the contract they thought their title from Delobelle was unquestionable.
A court of equity regards the solemnity of a con.tract, and upon a bill for rescission it demands a strong case on the part of the complainant to authorize its interference. It is the policy of the law to hold parties to their contracts, when fairly and deliberately made without fraud. The complaint in the case is the inability of the vendo'rs to make a perfect title, and thé bill discloses no extraordinary circumstances of hardship that would demand the interference of the Court upon other grounds. The court of equity may entertain such a case, but it is matter of discretion, *89 and it may very well leave the parties to their remedies at law: Humbard v. Humbard, 3 Head, 101, et vid.; Maney v. Porter, 3 Hum., 363; Gwinther v. Gerding, 3 Head, 197; Trigg v. Read, 5 Hum., 529. This disposes of the question made • on the ruling of the Court in refusing to dismiss the bill, on the ground that the complainants had their remedies at law.
In this case the defendants asked a reasonable time to perfect their title, which the Court very properly allowed: 6 Yer., 36: 7 Ves., 205; Hay. (Coop, ed.) 138. And the complainant would have properly been compelled to have accepted the after acquired title in the absence of fraud, if the title be a good one: 6 Hum., 309; 8 Hum., 439; 4 Johns. Ch. R., 84; 6 Yer., 36; 7 Ves. 205.
Was the title of Delobelle, a citizen and subject of the Empire of France, a good title? It seems that he was once a denizen here, but returned to France in 1859, and it does not appear that he had taken any steps to forswear his allegiance to his native country and become a citizen of this country, or that he had intended .to do so. ' It is urged that he was an alien and had no right to convey real estate here, and the Chancellor took this view of it. In this ruling we hold that the Chancellor erred. At common law an alien has no inheritable blood; but he could hold lands and grant them by devise or deed, burthened, however, with the right of escheat in the sovereign. The rule was, that “if an alien purchase land, the king shall have it upon office found:” 1 Bac. Ab., 203. This “'office found,” or inore properly *90 “inquest of office/’ was a summary inquisition by tlie king’s escheater, either by virtue of his office or by special royal writ, to ascertain whether in the particular case the sovereign has a right to the possession of the lands. It was done under the king’s officer by a jury of no “determined number,” either twelve or more or less: 3 Shars. Bl. Com., 258. This principle we have inherited from the mother country, and we have our own forms of proceeding in lieu of the ancient inquest of office; and also our escheators, whose duty it is to look after the rights of the State in lands that have escheated: Code, 2138, et seq.
Though an alien, says Chancellor Kent, may purchase land or take it by devise, yet he is exposed to the danger of being divested of the fee, and of having his lands forfeited to the State upon office found. His title will be good against every person but the State; and if he dies before any such proceeding be had, we have seen that the inheritance can not descend,, but escheats of course. If the alien should undertake to sell to a citizen, yet the prerogative right of forfeiture is not barred by’ the alienation, and it must be taken to be subject to the right of the government to seize the land: 2 Kent, 60. An alien may-take lands here by devise or by purchase and hold the same against all persons but the government. The government alone can allege the escheat: 7 Cranch, 619; Shep. Touch, 56; 2 Bl., 293; 1 Wash, on Real Property, 63. In a controversy between the alien and the citizen, to dispossess the alien, then he too must be treated as a citizen: Williams v. Wilson, *91 Mar. & Yer., 248. But in a case like this, the Court of Chancery would relieve the purchaser if it appears that the alien could not convey a perfect title. That depends upon our local laws or upon treaty stipulations between our general government and' that of which the alien is a subject: 2 Kent, 62.
There is here a kind of denization by which the alien holds and enjoys the rights of a citizen in real estate. He may take and hold, dispose of or transmit by descent, any real estate as a native citizen,, when he has declared his intention under the naturalization laws to become a citizen of the United States: Code, 1998. When fully naturalized, he becomes invested with all the rights of the native citizen, except as restricted by the Constitution from holding certain offices. In England this denization was by the king’s letters patent. It received the alien into society as a new man, says Bacon, and makes him capable to purchase and trasmit lands by descent, but not inheritable to any other relative. But if naturalized by act of Parliament, then he in all things inherits like a natural born subject: 1 Bac. Ab., 198. Under our Code, “ an alien . may take and hold real estate in this State,, by purchase, inheritance, or in any other way, which may be agreed upon by treaty between the United States and the country of which he is a citizen or subject: Sec. 1998. The difficulty, we suppose, in construing that section in this particular case has arisen from the use of the words, “take and hold, dispose of or transmit by descent any real estate,” in the sue- *92 ceeding section as applied to a resident alien who has legally declared his intention to become a citizen. It was the absence of the words “ dispose of,” in the first section referred to, perhaps, that generated the doubt. It may be observed that by the ancient English law an alien could not purchase or inherit any lands; and the reason quaintly stated by Bacon is, that an interest in the soil requireth a permanent allegiance, which would probably be inconsistent with that which he oweth to his own natural liege lord: I Bac. Ab., 201. And in some of the States of this Union this principle yet prevails. Our statute was an innovation upon the ancient law, and as early as 1827, it was held that in this State an alien may acquire title to lands by purchase and may convey by deed or will, and the vendee, or devisee, will take the same estate the alien had, subject to be divested by the government upon office found : Mar. & Yer., 248. The object of the provision incorporated into the Code was still more to liberalize this principle; but it is made to depend partially upon reciprocal treaty stipulations. And this cause must be determined at last upon the international agreement on the subject existing between France and this country, in connection with this provision of our law. If the law contravenes the treaty, the latter must prevail. The treaty is the supreme law on this subject. Whenever a right grows out of or is protected by a treaty, it is sanctioned against all the laws and judicial decisions of the Stale; and whoever may have this right, it is to be protected: Owing v. Norwood’s Lessee, 5 Cr., 348; Pasch. Anno *93 tated Com., 249. The 7th article of the treaty of 1853 between the United States and France, negotiated by Hon. Edward Everett on the part of 'this country, and the Count DeSartiges on the part - of France, has-the following provision; “ In all the States of the Union whose existing laws permit it, so long and to the same extent as the said laws shall remain in force, Frenchmen shall enjoy the right of possessing personal and real property by the same title and. in the same manner as the citizens of the United States. They shall be free to dispose of it as they may please,, either gratuitously or for value received, by donation,, testament, or otherwise, just as those citizens themselves ; and in no case shall they be subjected to taxes on- transfer, inheritance, or any others different from those paid by the latter, or to taxes which shall not be equally imposed.
“As to the States of the Union by whose existing-laws aliens are not permitted to hold real estate, the President engages to recommend to them the passage of such laws as may be necessary for the purpose of conferring this right.
“In like manner, but with the reservation of the ulterior right of establishing reciprocity in regard to possession and inheritance, the government of France accords to the citizens of the United States the same-rights within its territory in respect to real and personal property, and to inheritance, as are enjoyed there by its own citizens.”
At the time of the execution of Delobelle’s deed, in this case, the State of Tennessee was one of the *94 States of the Union, “by whose existing laws aliens ivere permitted to hold real estate” on the terms prescribed in its own enactment; and hence the treaty of 1853 has a direct application; Act of 1854, ch. 42, sec. 2. The provision of the Code was not among our earlier laws upon this subject, and it was a long stride toward the liberalization of our State polity toward the citizens of other countries. Whether the whole of said section is made to depend for its vitality upon the existence of a treaty, and whether it proposes to inaugurate a new policy unknown to the common law, and unknown to any of our former statutes as to all aliens, it is not necessary in this cause to determine: but construing the law in connection with the treaty, we have no hesitation in holding that as to the subjects of France, they are invested by the law and the treaty together with the right to make an indefeasible title by deed or otherwise, of lands owned by them in this State.
We hold, therefore, that the alienage of Delobelle at the time he executed his deed, does not affect its validity as a conveyance of the fee, and that the effect of the section of the Code referred to, and the treaty with France, was to abrogate and annul all right of escheat the State may have had in said lands prior to said treaty and enactment.
It results that the decree of the Chancellor must be reversed, the injunction dissolved and the bill dismissed.